UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE SEARCH OF:<br>1545 S Hoyt Street Unit 82, Anchorage, AK, HEREIN **TARGET RESIDENCE** | ) ) ) ) CASE# 3:21-MJ-00655-MMS ) ) ) ) |



SW 20211009

### AFFIDAVIT IN SUPPORT OF APPLICATION

I, Britt L Damon, being first duly sworn, hereby depose and state as follows:

### AGENT'S BACKGROUND

1) This affidavit is being submitted in support of an application for a search warrant for the following premises:

    a. 1545 S Hoyt Street Unit 82, Anchorage, AK **(Hereinafter, TARGET RESIDENCE)**.

2) As such, it does not include all the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested search warrant. The location and items to be searched are described herein and in Attachment A, and the items to be seized are described herein and in Attachment B.

3) I am a Special Agent employed by the United States Drug Enforcement Administration (DEA) currently assigned to the Anchorage District Office. I have been employed by the DEA since January of 2012. Prior to employment with the DEA, I served as a Military Police Officer in

1

the United States Army. During the course of my employment as a Law Enforcement Officer, I have gained experience in conducting drug investigations and have received the benefit of many years of such experience of fellow agents and officers. During the course of your Affiant's employment with the DEA, your Affiant has worked in an undercover capacity and conducted investigations of controlled substances violations in conjunction with agents and officers from other jurisdictions. Your Affiant has worked with and conducted investigations utilizing confidential sources. Your Affiant has also conducted or assisted in investigations which have led to the arrest and conviction of persons for violations dealing with the sale, possession and/or manufacture of cocaine, methamphetamine, heroin, fentanyl, MDMA, LSD, psilocybin, marijuana and other controlled substances, money laundering and the seizure and forfeiture of assets. As part of these investigations, your Affiant has been able to interview arrested subjects and their associates. Through these interviews, your Affiant has learned how and why these offenders conduct various aspects of their drug trafficking activities, to include communicating, manufacturing, packaging, distribution, transportation and concealment of controlled substances and assets and money laundering.

4) Based upon my experience, training, and information I have received from officers of other federal, state, and local law enforcement agencies involved in the investigation of controlled substance offenses and proceeds derived from the illegal possession and sale of controlled substances, I know that individuals involved in the illegal distribution of illegal controlled substances have the following characteristics in common:

    a. That drug dealers very often place assets, including accounts at financial institutions, in names other than their own to avoid detection by government or other law enforcement agencies.

    b. That even though these assets are in other names, the drug dealers continue to use these assets and exercise dominion and control over them.

2

Case 3:21-mj-00655-MMS   Document 1   Filed 10/09/21   Page 2 of 12



c. That drug dealers frequently maintain on-hand amounts of United States currency in order to maintain and finance their ongoing illegal drug business.

d. That drug dealers often maintain books, records, receipts, notes, ledgers, computers, computer disks, tickets, money orders, cashier's checks, wire transfer receipts, and similar drug related financial documents and records pertaining to the transportation, ordering, sale and distribution of illegal drugs. Furthermore such documents are often written in code.

e. That drug dealers commonly front (provide illegal drugs on consignment) to their clients and often keep the aforementioned items so they can account for their drugs, the money owed for these drugs, and who has or owes for these drugs.

f. That the aforementioned books, records, receipts, notes, ledgers, tickets, money orders, cashier's checks, and similar financial documents and records, including computers, computer disks, diskettes, and hard drives, and other media are maintained where the drug dealers have ready access to them. Often the described records and documents are maintained on computers and electronic media in the drug trafficker's home.

g. That it is common for drug dealers to conceal contraband, large amounts of currency, precious metals, jewelry, address lists, telephone lists, proceeds of drug sales, and records of drug transactions in secure locations within their residences, yards, garages, offices, businesses, automobiles, safes, safe deposit boxes, and obscure locations known only to them, i.e., mail drops, mini storage warehouses, etc., for ready access and to conceal the same from law enforcement authorities.

h. That persons involved in illegal drug trafficking conceal in their residences, yards, offices, businesses, safes, garages, storage buildings, vehicles, safe deposit boxes, and obscure locations, caches of drugs, large amounts of currency, weapons, financial instruments, precious metals, jewelry, and other items of value and/or proceeds from drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending of money made from engaging in illegal drug trafficking activities. Also, drug dealers frequently change vehicles and register vehicles in other names to avoid detection by law enforcement personnel.

i. That drug dealers often purchase expensive vehicles, businesses and residences with the proceeds from their drug transactions. Also, that drug dealers frequently change vehicles and register vehicles in other names to avoid detection by law enforcement personnel.

j. That drug dealers amass large proceeds from the sale of illegal drugs, they often attempt to legitimize their profits and maintain evidence of financial transactions relating to the obtaining, transferring, secreting or spending of large sums of money derived from their illegal drug distribution activities. That to accomplish these goals, drug dealers utilize, including but not limited to, foreign and domestic banks



    and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations, business fronts, telephones, cellular telephones, facsimile machines, digital and various paging devices, and two-way radio systems. Furthermore, drug dealers frequently change telephone numbers, paging devices and telephone instruments.

    k.    That drug dealers commonly maintain addresses and telephone numbers in books or papers which reflect names, alias names, addresses, and telephone numbers for their associates in their illegal drug trafficking.

    l.    That drug dealers take or cause to be taken photographs, video and audiotapes of themselves, their associates, their property, and their illegal products. Furthermore, these drug dealers often maintain these photographs, video and audiotapes in their residences, offices, safes, garages, storage buildings, vehicles and safe deposit boxes.

    m.    That drug dealers frequently keep paraphernalia for packaging, diluting, weighing, and distributing the illegal drugs. Furthermore, this paraphernalia includes, but is not limited to, scales, plastic bags, diluting or "cutting" agents, boxes, trash compactors, heat sealers, and sealing tape.

    n.    The courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, and in particular, illegal trafficking in controlled substances.

    o.    That drug traffickers very often possess firearms and other weapons for the purpose of protecting their drug trafficking enterprises from the efforts of law enforcement authorities as well as from persons who might attempt to steal any drugs or money possessed by the drug traffickers.

    p.    Affiant is aware that drug traffickers often maintain extra residences as stash houses, meeting locations, and temporary housing for drug associates. Furthermore, these residences are frequently rented, purchased or titled in others names even though the residences remain in the control of the drug traffickers.

## APPLICABLE STATUTES

5) The statutory provisions to which the current investigation relates include;

    a.    Title 21, United States Code, Section 841 (a) (1) and 846, the Distribution of Controlled Substances, the Possession of Controlled Substances with Intent to Distribute, as well as the conspiracy to commit those violations.

    b.    Title 18, United States Code, Section 1956, Laundering of Monetary Instruments

4



6) I am familiar with the provisions of these statutes and based upon my experience, I believe that the items described in this affidavit and which are sought with this search warrant are relevant and probative to the proof of violations of such sections of Title 21 and Title 18 as described herein.

## PURPOSE OF AFFIDAVIT

7) I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussions with other agents of the DEA and other law enforcement officers. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was provided by another law enforcement officer. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. In addition, this affidavit is based on information from the following sources:

   a. Oral and written reports about this and other investigations which I have received from other local law enforcement officers;

   b. Public records;

   c. My training and experience as a Special Agent and the training and experience of other law enforcement officials.

8) Based on the facts set forth in this affidavit, there is probable cause to believe that the Target Location is being used to commit violations of 21 U.S.C.§ 841(a)(1) and § 846 and 18 USC § 1956. There is also probable cause to believe that the items to be seized described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of additional individuals who are engaged in the commission of these offenses. Your affiant further states that there is probable cause to believe that the items sought for seizure will lead to evidence of the aforementioned crimes as well as the identification of

5

Case 3:21-mj-00655-MMS   Document 1   Filed 10/09/21   Page 5 of 12

individuals who are engaged in the commission of conspiracy to distribute controlled substances and related crimes.

9) Based on the facts set forth in this affidavit, there is probable cause to believe that **Iulai MIKAELE**, and others, known and unknown have violated 21 USC, Section 841 (a) (1) and 846 and 18 USC § 1956. There is also probable cause to believe that the premises described in Attachment A will contain items of evidence that will enable investigators to more fully identify the names, phone numbers, and residences of associates of MIKAELE, and others known and unknown; and to identify the dates, times, and places for commission of illegal activities, including locations of drug sales, details surrounding drug shipments, methods and means of drug transportation and smuggling, and methods and means of transporting and/or laundering drug proceeds.

## LOCATION TO BE SEARCHED

10) I submit this affidavit in support of an application for a search warrant for the residence located at **1545 S Hoyt Street Unit 82, Anchorage, AK, TARGET RESIDENCE**. The items sought in the search are more particularly set forth in Attachment B to this affidavit.

11) The **TARGET RESIDENCE** is described as an Unmarked Tan Trailer at 1545 S. Hoyt, Anchorage, AK, which is located south of Debarr on Hoyt Street in Anchorage. It is the second trailer from Hoyt Street on the south end of the cul-de-sac and does not have any visible numbers marking the trailer. Anchorage Police Records show the residence is Unit 82. The **TARGET RESIDENCE** is a tan trailer with white trim, white storm door, and a brown wooden deck on the North side of the trailer.

6



## BASIS OF INVESTIGATION

12) On 10/5/2021, Ontario, CA Police Department Interdiction Unit provided information to AST Airport Interdiction Unit, who stated they had previously seized multiple parcels destined for Alaska, each containing Lego boxes concealing multiple pounds of methamphetamine. UPS opened the exterior of a suspect box and observed multiple Lego boxes inside that were re-sealed. UPS advised the Ontario PD Interdiction Unit. The interdiction unit contacted AST and let the parcel go to further the case in Alaska.

13) On 10/6/2021, AST executed a warrant on the UPS Parcel, which revealed approximately 8.6 pounds of methamphetamine (presumptive positive for methamphetamine). On 10/6/2021, DEA conducted a controlled delivery of the parcel which was ultimately brought to Elishua Maravilla PERDOMO at 4019 E. 8th Avenue, Unit 2, Anchorage, AK. During the controlled delivery a silver truck was observed coming and going from the rear of the apartment complex at 8th Avenue.

14) PERDOMO subsequently agreed to cooperate with the investigation, stating all of the drugs were coming from his cousin Alberto HIRALDO-ZAYAS in California, and all of the empty parcels in his living room previously contained methamphetamine and heroin. PERDOMO stated his role was to operate the "stash house".

15) PERDOMO advised that earlier that day, a "Samoan" male had come to his residence and picked up approximately 8 pounds of methamphetamine. PERDOMO advised the Samoan would likely go back to his residence. PERDOMO pointed out the trailer on a map as the **TARGET RESIDENCE**. Law Enforcement traveled to that location and observed a silver Chevy truck parked outside the residence matching the truck description that surveillance observed earlier that day and as was described by PERDOMO.



16) On 10/8/2021, a second mail parcel was sent by the HIRALDO-ZAYAS organization and was ultimately provided to PERDOMO. Law enforcement seized the second parcel and executed a search warrant, which yielded approximately 4 kilograms of suspected heroin (which tested positive for the presence of heroin).

17) On 10/9/2021, PERDOMO was instructed by HIRALDO-ZAYAS to meet with an unknown person and provide the 4 kilograms of heroin. PERDOMO was subsequently contacted by the male he knows as the "Samoan". Surveillance set up in the area of the meet location and observed a white Chevy SUV occupied by two males. PERDOMO arrived and met with the "Samoan" male and provided a quantity of "sham" drugs (representing the 4 kilograms and approximate two pounds of methamphetamine) which HIRALDO-ZAYAS instructed PERDOMO to provide to the male subject. Officers arrested all three subjects on scene and identified the passenger of the white SUV as Iulai MIKAELE. A bag containing approximately 100grams of heroin and approximately 50 grams of methamphetamine was seized from the center console between MIKAELE and the driver. MIKAELE had a driver's license on his person which shows his address as 1545 S Hoyt Street Unit 82, Anchorage, AK; the **TARGET RESIDENCE.** MIKAELE has a criminal history including drug charges.

18) The driver was identified as Daniel MATHIASON. MATHIASON was also in possession of a firearm at his time of arrest. MATHIASON was interviewed and advised that he had picked up MIKAELE at his trailer off Hoyt and driven him to the meeting location. MATHIASON advised that the drugs in the console were placed there by MIKAELE. MATHIASON pointed out the **TARGET RESIDENCE** on a map.

19) Based on the information provided herein, I submit there is probable cause to search the **TARGET RESIDENCE** located at 1545 S Hoyt Street Unit 82, Anchorage, AK.

Respectfully submitted,

BRITT DAMON
Digitally signed by BRITT DAMON
Date: 2021.10.09 20:12:35 -08'00'

_____
Britt L. Damon, Special Agent
Drug Enforcement Administration

Signed digitally and sworn telephonically this date:
Oct 9, 2021



_____
UNITED STATES MAGISTRATE JUDGE

9



## ATTACHMENT A:

**1545 S Hoyt Street Unit 82, Anchorage, AK**

The **TARGET RESIDENCE** is described as an Unmarked Tan Trailer at 1545 S. Hoyt, Anchorage, AK, which is located south of Debarr on Hoyt Street in Anchorage. It is the second trailer from Hoyt Street on the south end of the cul-de-sac and does not have any visible numbers marking the trailer. Anchorage Police Records show the residence is Unit 82. The **TARGET RESIDENCE** is a tan trailer with white trim, white storm door, and a brown wooden deck on the North side of the trailer.





## ATTACHMENT B - ITEMS TO BE SEIZED

The following items are subject to seizure pursuant to this search warrant, as they constitute evidence and instrumentalities of the following violations of federal law:

- Title 21, United States Code, Section 841 (a) (1) and 846, the Distribution of Controlled Substances, the Possession of Controlled Substances with Intent to Distribute, as well as the conspiracy to commit those violations.

- Title 18 United States Code, Section 1956, Laundering of Monetary Instruments.

1. Mail and parcel shipping service materials including labels, airbills, envelopes, packaging, and receipts believed to be use in furtherance of the above referenced violations of federal law;
2. Computers and computing systems, hard drives, cable modems, wireless routers, electronic storage media, central processing units, and all associated storage media for electronic data, together with all other computer-related operating equipment.  Computers and related storage devices may be seized, but not searched without a separate warrant.
3. Records evidencing use or ownership and use of the computers or electronic storage media including, but not limited to, registry and setup information within the computer's operating system and customizations to the operating system's directory structure.
4. United States currency, foreign currency, precious metals, jewelry, stocks, bonds, money orders, certificates of deposit and cashier's checks;
5. Items evidencing the expenditure of drug related proceeds, namely: receipts, purchase agreements, vehicle titles, warranty applications, homeowners' or renters' insurance applications and claims, photographs and/or video recordings of luxury items, jewelry, expensive vacations;
6. Account statements, account summaries, credit card statements, banking deposit slips, handwritten notes containing account information, account holder and amount deposited, money market accounts, and overseas banking information to include routing codes, deposit receipts, canceled checks, loan agreements and loan applications.
7. Safe deposit box keys and agreements and commercial storage locker keys or records;
8. Wire Transfer documents, receipts and handwritten notes containing wire service tracking numbers, amounts sent and intended pay-out locations;
9. Cellular telephones and pre-paid long-distance cards. Cellular telephones and other communications devices including Blackberries may be seized, but not searched without a separate warrant.
10. Printed flight itineraries, luggage tags, passports including visas, airline tickets, airline ticket receipts, pre-printed airline luggage tags, handwritten notes containing airline confirmation codes, frequent flyer mileage plan cards and summaries, business cards from other areas, hotel receipts and car rental agreements and receipts.
11. Items tending to establish the use and/or possession of fraudulent identification documents, namely: birth certificates, Baptismal records/certificates, passports, driver's licenses, State issued identification cards, Immigration documents, Social Security cards;



12. Equipment associated with and used for the protection and security of the controlled substance distribution operation, namely; video surveillance cameras, video surveillance monitors, Internet "web-cams", motion sensors, trip-wire cameras and concealed listening/recording devices;
13. Items tending to establish the identity of persons in control of the premises, namely: utility company receipts, mortgage or rent receipts, canceled mail, envelopes, keys, telephone bills, charge card receipts/statements, lease-rental or sale agreements or contracts, gas receipts, notebooks, photographs, videos, savings account passbooks, passports, diaries, notebooks, vehicle registrations and titles, land titles, escrow papers, legal documents, medical records, and papers denoting monetary amounts received from the distribution of controlled substances;
14. Items tending to establish and document sales of controlled substances, or conspiracy to manufacture, distribute, and/or possess with the intent to distribute controlled substances, namely: buyer lists, seller lists, ledgers, tally sheets, "pay and owe" sheets, price lists, notes and diaries;
15. Address books, papers and documents bearing handwritten notations of names and associated telephone numbers, and photographs depicting subjects and/or co-conspirators with controlled substances, large sums of money, guns and expensive assets (i.e. jewelry, luxury cars);
16. Drug distribution paraphernalia, including but not limited to: packaging materials, drug ledgers, pay-owe sheets, customer lists, price lists and code sheets.
17. Illegal drugs and cutting agents.
18. Firearms and ammunition.